**PEPSI–COLA BUFFALO BOTTLING COMPANY and Squirt-Vernors of Buffalo, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 339, 340, Dockets 32417, 32418.

United States Court of Appeals Second Circuit.

Argued March 7, 1969.

Decided March 25, 1969.

Victor C. Silverstein, Buffalo, N. Y., for petitioner.

Vivian Asplund, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The National Labor Relations Board has adopted a "rule against relitigation" which has the effect of denying to a litigant in an unfair labor practice action review by the Board of decisions made by a regional director in a prior representation proceeding, even if that prior decision is at the very heart of the unfair labor practice dispute. See 29 C.F.R. § 102.67. We find the Board's action pursuant to that rule unjustified in this case. Accordingly, the petition to set aside the Board's decision filed on May 2, 1968, is granted and the case is remanded to the Board for review.

### I.

Pepsi-Cola Buffalo Bottling Company and Squirt-Vernors of Buffalo, Inc. [hereinafter referred to jointly as Pepsi-Cola or the Company] bottle and market soft drinks in the Buffalo area. The Company moves its products primarily through the services of 54 "distributors." These distributors are individuals who each own or lease a single truck and alone, or in some instances with a helper, carry the soda to the retail stores which are Pepsi-Cola's customers. On February 15, 1967, the International Union of District 50, United Mine Workers of America [hereinafter the Union] filed

with the Board a petition, subsequently amended on May 12, 1967, for certification as bargaining representative to negotiate with Pepsi-Cola for a unit which included the distributors, among others. The Company sought denial of certification insofar as it related to the distributors on the ground that they were independent contractors, not employees, and hence not properly includible in the bargaining unit.[1] See 29 U.S.C. § 152(3); N. L. R. B. v. United Insurance Co., 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). An inquiry into the dispute was conducted by a hearing officer.[2] On the basis of this examination, the Acting Regional Director for the Board's Third Region on August 9, 1967 concluded that the distributors were employees and therefore ordered an election in a bargaining unit consisting of the distributors and driver salesmen. In the extended history of this dispute, this was the only determination made on the merits of this crucial issue.

Pepsi-Cola petitioned the Board to review the Regional Director's decision. As required by the Board's rule, the request for review was in a "self-contained" document "enabling the Board to rule on the basis of its contents without the necessity of recourse to the record." 29 C.F.R. § 102.67(d). The standards set forth by the Board for granting review in such cases are highly restrictive. They require a petitioner to show not merely that the regional director's decision was erroneous, but that there are "compelling reasons" for review.[3] The Board thus denied Pepsi-Cola's petition on the ground that the issues raised were not substantial enough to warrant review. An election was then held in which a majority of those in the unit voted for the Union; the Board certified the Union as exclusive bargaining representative on October 26, 1967.

The Company, still convinced that the distributors were not employees, again sought to raise this issue before the Board. After consultation with counsel, it concluded that the way to bring the issue to a head was to decline to bargain, and by letter it so informed the Union. Predictably, as a result of the Company's action, the Board's General Counsel issued a complaint against Pepsi-Cola on January 26, 1968, charging that the refusal to bargain constituted an unfair labor practice in violation of 29 U.S.C. § 158(a) (1) and (5). In response, the Company's answer freely admitted the

---

1. The initial petition related only to 5 driver salesmen. The May 12 amendment added the distributors, and production and maintenance employees. The Company and Teamsters Local 264, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which was permitted to intervene in the proceedings, moved to dismiss the amended petition on the ground that the contract between the Company and the Teamsters covered production and maintenance employees and hence barred a representation proceeding involving these employees. The regional director agreed that the contract was a bar and dismissed the petition insofar as it related to production and maintenance workers.

2. The hearing officer is a Board employee, under the overall authority of the Board's General Counsel. See CCH Lab.Law. Rep. ¶ 1120.0 at 3053. He is not to be confused with a "trial examiner" who is an independent "hearing examiner" within the meaning of the Administrative Procedure Act. 5 U.S.C. § 556, 5 U.S.C. § 3105.

3. "The Board will grant a request for review only where compelling reasons exist therefor. Accordingly, a request for review may be granted only upon one or more of the following grounds:
 (1) That a substantial question of law or policy is raised because of (i) the absence of, or (ii) a departure from, officially reported Board precedent.
 (2) That the regional director's decision on a substantial factual issue is clearly erroneous on the record and such error prejudicially affects the rights of a party.
 (3) That the conduct of the hearing or any ruling made in connection with the proceding has resulted in prejudicial error.
 (4) That there are compelling reasons for reconsideration of an important Board rule or policy." 29 C.F.R. § 102.67(c).

purported certification of the Union and its refusal to bargain, but reiterated its contention that the distributors were independent contractors.

At this point, the Company's well laid plans hit a snag. The General Counsel moved for summary judgment, relying on the Regional Director's decision in the representation proceedings, which the Board had already declined to review after its perusal of the Company's bare petition. The General Counsel's theory was that the decision of the Regional Director was final. 29 C.F.R. § 102.67 (b). Further, the Board's own rule states "[d]enial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceedings." 29 C.F.R. § 102.67(f). On May 2, 1968, the Board granted the motion for summary judgment and ordered Pepsi-Cola to bargain with the union. It evidently agreed with the General Counsel's approach, for, as the parties have presented the issue to us, it did not reopen the question whether the distributors were employees or independent contracts—the very reason for which the Company had decided to risk committing an unfair labor practice. Thus, the Board never reviewed the record independently of the Regional Director's conclusions on this issue, it simply swallowed his decision into its own.[4] It is this prohibition against disturbing the Regional Director's decision *for any reason* once the Board has concluded it does not meet the formidable standards for review set out in 29 C.F.R. § 102.67(c) which has brought Pepsi-Cola to this court.

## II.

We are thus called upon to reconcile the Board's need to keep its house in an efficient manner by standards it believes will achieve that end with a litigant's right to have his case adjudicated by the persons Congress has chosen to make final decisions in labor cases. The Board's procedures, under 29 C.F.R. § 102.67 naturally emphasize the sedulous disposition of controversies. It is a system of review not unlike that available upon a writ of certiorari, which has been called "the least satisfactory system of all." Auerbach, Scope of Authority of Federal Administrative Agencies to Delegate Decision Making to Hearing Examiners, 48 Minn.L.Rev. 823, 865 (1964). In fact, the Board's procedure is even more cursory than certiorari since the petition for review must be a "self-contained" document, cut adrift from the record. In a certiorari proceeding, by contrast, the record itself is certified to the higher court for examination and is before it upon consideration of the petition.

■ This shift of responsibility is dramatically illustrated by the facts of this case. Even the Board admits that the resolution of the question whether the distributors are employees or independent contractors is difficult and requires a fine-drawn balancing of facts and law. And for precisely this reason the Board has urged that we follow the rule of *United Insurance Co., supra,* that where the choice is between "two fairly conflicting views," the court must defer to the Board's decision. But here, the Board has not actually considered the questions of fact and law, as it did in *United Insurance Co.* Concluding that the Regional Director had not erred egregiously, it merely rubber-stamped his decision. Thus, the Regional Director's decision was perpetuated even though it may in fact have been wrong.

4. Although the Board's ruling on the motion for summary judgment states that its findings of fact are made "on the basis of the record before it" we read this, as does the Board in its brief, to mean on the basis of the regional director's decision as to the appropriate unit. Our conclusion that the Board has refused to examine the record made before the hearing officer (not examiner) is buttressed by the fact that its only statements about the appropriate unit are unexplained conclusions. Moreover, the Board declares in its opinion "the Respondent * * * asserts that the Board * * * must undertake an independent *de novo* consideration of the evidence adduced at the hearing * *. We find no merit in these contentions." (Italics are the Board's.)

And were we now to apply the doctrine of *United Insurance Co.* we too would be blindly endorsing the questionable result. Such deference to the regional director was not intended by Congress. It decided that the Board itself must rule whether a litigant has committed an unfair labor practice. See 29 U.S.C. § 160(c); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Board seeks to use the rule against relitigation to carve out an exception for unfair labor practices that happen to arise in the context of a representation dispute, though conceding that if this unfair labor proceeding arose independently of the representation dispute the petitioner would have been entitled to full review by the Board of the Hearing Examiner's findings of fact and conclusions of law. We see no basis for thus mutilating the legislative scheme. The consequences of committing an unfair labor practice are the same no matter what the source of the dispute.

 The very fact that the Board has great discretion in making judgments, cf. Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 490, 74 S.Ct. 161, 98 L.Ed. 228 (1953), especially in representation matters, N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946), indicates a legislative purpose to confer final authority in these situations on the Board itself—not a subdelegatee. As another court has remarked, "While we recognize the considerable discretion with which the Board has been entrusted, it is proper to observe that with discretion goes responsibility." N. L. R. B. v. Bonnie Enter-

prises, Inc., 341 F.2d 712, 714 (4th Cir. 1965) (dictum). In an unfair practice proceeding, the Board cannot completely abdicate its responsibility to a regional director, a functionary whose appointment is not even subject to consideration by the Senate, as are those of the Board members.[5] Moreover, the Board's experience is particularly relevant and desirable in deciding complex issues relating to the appropriate bargaining unit before the potent sanctions arising from the finding of an unfair labor practice are invoked.[6] See N. L. R. B. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947); Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

Recognition of the importance of the Board's decision and judgment as distinguished from that of a subordinate was foreshadowed in N. L. R. B. v. Duval Jewelry Co., 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958). In *Duval* the Court approved a procedure by which a Board subordinate was empowered to issue a subpoena *duces tecum*. But the Court tolerated this technique only because the hearing officer did not have the final power of decision; "[u]ltimate decision on the merits of all the issues coming before [the hearing officer] is left to the Board." 357 U.S. at 7, 78 S. Ct. at 1028. See also Lewis v. N. L. R. B., 357 U.S. 10, 78 S.Ct. 1029, 2 L.Ed.2d 1103 (1958).

Although the legislative history of the Labor Act does not provide a clear answer to the question involved in this case,[7] Congress' treatment of certain

---

5. "[A]nother risk is that subordinates will be less competent than agency heads, particularly where the superiors have been selected for their expertise in a certain field. In such a situation private parties have a strong claim to the personal attention of the agency heads." Note, Subdelegation by Federal Administrative Agencies, 12 Stan.L.Rev. 808, 812 (1960). Cf. Porter v. Roach, 69 F.Supp. 56 (D. Ore.1946).

6. But the Supreme Court has indicated that a court's deference to the Board is

not limited to issues involving the Board's expertise but extends to situations such as this, where the decision rests on the common law of agency, a law which a court might apply as effectively as the Board. N.L.R.B. v. United Insurance Co., 390 U.S. at 260, 88 S.Ct. 988, 19 L.Ed.2d 1083.

7. 29 U.S.C. § 153(b) does permit the Board to delegate determination of appropriate bargaining units to a regional di-

bills involving the Board also supports analysis. For example, in 1961, the administration proposed reorganization plans for many federal regulatory agencies. These plans sought to increase the power of the agencies to subdelegate authority to officials generally on the level of the Board's regional directors. The N. L. R. B. plan would have given these officials the power to make final decisions, subject only to the discretionary review of the agency's members. Although provisions to this effect were enacted into law for the Federal Trade Commission, the Civil Aeronautics Board, and the Federal Maritime Commission, Congress rejected, after long and sometimes acrimonious debate, similar provisions which would have applied to the N. L. R. B., the Securities and Exchange Commission and the Federal Communications Commission. The reason for this carefully considered refusal was precisely that Congress was reluctant to authorize all hearing examiners to render final, unreviewable decisions. Auerbach, *supra,* at 839. See also, 107 Cong.Rec. 10223, 12905–32 (1961).

■ We are mindful of the pressures upon the Board arising out of the many responsibilities assigned to it. It is not our desire, therefore, needlessly to require the Board to duplicate the work of its Regional Directors. Rather, we seek only to insure that, before taking the serious step of declaring that an employer has committed an unfair labor practice, the Board will simply review the record before the Regional Director to determine whether his decision was correct, and not merely whether it was clearly erroneous. It may be that in the greater number of cases such as this the result will be no different. However, it is in the cases which present difficult,

factual and legal issues that the Board's superior knowledge and background is most desirable. Cf. N. L. R. B. v. United Insurance Co., *supra.*

What we have said is not to be construed as a declaration by us that Pepsi-Coal must be swathed in the full procedural regalia provided by the Administrative Procedure Act, 5 U.S.C. § 551 et seq. That Act deliberately excluded cases involving "the certification of employee representatives," from its coverage. 5 U.S.C. § 554(a) (6). Moreover, as we have noted, footnote 7, 29 U.S.C. § 153(b) permits the Board to delegate representation cases to its regional directors. Taken together, these provisions indicate a Congressional intent that representation matters be handled with dispatch, subject to the safeguard of plenary review by the Board at the unfair labor practice stage.

Nor does our decision in any way upset the Board's consistent refusal, absent a change in circumstances, to admit additional evidence in an unfair labor practice proceeding when the employer has had a full opportunity to present his case before the Regional Director. The purpose of the Board's rule in this regard is to bring all the evidence out at the start of the proceedings, so that the employer cannot withhold facts for the purpose of delay. See, e. g., Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 161–162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. American Steel Buck Corp., 227 F.2d 927, 929 (2d Cir. 1955); cf. N. L. R. B. v. Joclin Mfg. Co., 314 F.2d 627, 630–632 (2d Cir. 1963). Pepsi-Cola does not ask leave to submit additional evidence before the Board. We emphasize that the objection is not to the Board's refusal to grant a hearing *de novo* on a proceeding properly delegated

rector. But this determination does not have the serious consequences that a finding of an unfair labor practice does. The purpose of the provision, added by House and Senate conferees late in the gestation period of the 1959 amendments to the Labor Act, was to speed the work of the Board. At the same time, however,

Congress indicated that the regional directors would be kept in check by permitting review of their decisions by the Board itself. See 2 N.L.R.B., Legislative History of the Labor-Management and Disclosure Act of 1959, 1811–12 (1959).

to a Regional Director, but its refusal to review what that official has decided and to make its own determination as to whether the Regional Director's decision was right.

Therefore, the petition for review is granted and the case is remanded to the Board for further proceedings not inconsistent with this opinion. We express no opinion as to whether the distributors in question are employees or independent contractors.