**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAGNESIUM CASTING COMPANY, Respondent,**

**United Steelworkers of America, Intervenor.**

**No. 7462.**

United States Court of Appeals, First Circuit.

May 21, 1970.

---

Abigail Cooley Baskir, Washington, D. C., Attorney, with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Marshall F. Berman, Washington, D. C., Attorney, were on the brief, for petitioner.

Jerome H. Somers, Boston, Mass., with whom Louis Chandler and Stoneman & Chandler, Boston, Mass., were on the brief, for respondent.

Before ALDRICH, Chief Judge, COFFIN, Circuit Judge, and BOWNES, District Judge.

COFFIN, Circuit Judge.

On the basis of the evidence adduced at a unit determination hearing on March 14, 1968, the Regional Director concluded that six of the seven assistant foremen whose status was in dispute were employees rather than supervisors and thus includible in the proposed bargaining unit at the Magnesium Casting Company plant in Hyde Park, Massachusetts. The Company's Request for Review, contending that three of the six—Scott, Morris, and Massey—were supervisors, was denied by the Board as raising no substantial issues warranting review. On June 21, the United Steelworkers of America won the election 140 to 59.

Pursuing the accepted method for challenging such unit determinations, Boire v. Greyhound Corp., 376 U.S. 473, 476–

477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), the Company refused to bargain with the Union. The Company's answer to the ensuing unfair labor practice complaint renewed the contention concerning the status of Scott, Morris, and Massey. In response to the General Counsel's Motion for Summary Judgment, the Company asserted the existence of newly discovered evidence concerning Scott's status and his activities on behalf of the Union. The Trial Examiner granted the Motion for Summary Judgment, concluding that the Company's evidence regarding Scott was not newly discovered and thus that the Regional Director's determination in the representation proceeding should be followed. The Board affirmed the Summary Judgment and adopted the Trial Examiner's conclusion that the Company had committed an unfair labor practice by its refusal to bargain.

Thereafter, the Company filed a Motion for Reconsideration with the Board, contending that the holding in Pepsi-Cola Buffalo Bottling Co. v. N.L.R.B., 409 F.2d 676 (2d Cir. 1969), cert. denied, 396 U.S. 904, 90 S.Ct. 219, 24 L.Ed.2d 181 (1969), required the Board to make its own findings of fact regarding the status of Scott, Morris, and Massey. Noting its disagreement with the *Pepsi-Cola* rule, the Board denied the Motion, and comes to us seeking enforcement of its order to bargain.

I.

■■ The Company's initial contention is that the inclusion of Scott, Morris, and Massey in the bargaining unit was improper because all three are supervisors within the meaning of the NLRA, 29 U.S.C. § 151 *et seq.* Under section 9 of the Act, only "employees" are properly includible in a bargaining unit, which provision combines with the section 2(3) definition of "employee" to exclude from the bargaining unit "any individual employed as a supervisor". Section 2(11) defines "supervisor" as

" * * * any individual having authority, in the interest of the employer,

to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, *if* in connection with the foregoing *the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."* [Emphasis added.]

Since the definition is set forth in the disjunctive, it is generally agreed that the possession of any one of the listed powers is sufficient to confer "supervisory" status, e. g., N.L.R.B. v. Metropolitan Life Insurance Co., 405 F.2d 1169, 1173 (2d Cir. 1968); N.L.R.B. v. Little Rock Downtowner, Inc., 414 F.2d 1084, 1089 (8th Cir. 1969), as long as "such authority is not merely of a routine or clerical nature, but requires the use of independent judgment". See, e. g., Amalgamated Clothing Workers etc. v. N.L.R.B., 420 F.2d 1296, 1300 (D.C. Cir. 1969).

Nevertheless, as Judge Woodbury stated in N.L.R.B. v. Swift and Company, 292 F.2d 561, 563 (1st Cir. 1961),

" * * * the gradations of authority 'responsibly to direct' the work of others from that of general manager or other top executive to 'straw boss' are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor.' "

With that in mind, the Regional Director's determination should be sustained if supported by substantial evidence.

The instant case presents one of those situations where the gradations of authority are particularly difficult to ascertain. The Company has approximately 250 employees in the unit found appropriate, some 22 of whom work in the Products Division. Within that Division there are two sections—one for plating and finishing, another for assembly and packaging—each with 10–12 men under the supervision of a foreman, both of whom are conceded to be "supervisors". It is within these 10–12 man sections that the present controversy arises. The Company contends that all four assistant foremen are also supervisors; the Regional Director found that only Zagrafos—who worked with 9 employees and had exercised supervisory powers on several occasions—was a supervisor, and that Morris, Massey, and Scott were not.

Morris and Massey are employed in the assembly and packaging section of the Products Division. Working with 2–4 others in separate groups, each performs routine supply and inspection functions in addition to the normal packaging work of the section. Both are paid somewhat more than their fellow workers, but substantially less than their foreman. Neither has ever exercised any of the powers specified in section 2(11).[1] Both refer any important decisions to their foreman, who makes the daily work assignments and checks the work of each of the men in the section, including Morris and Massey, at regular 10 minute intervals throughout the working day. Whatever responsibility these assistant foremen may have vis-a-vis their fellow workers, it is of a fairly routine nature; while some judgment is obviously required to determine what problems should be referred to the foreman, such judgments hardly suggest a finding of "supervisory" status. We are troubled by their attendance at bi-weekly "management" meetings but that one factor does not alter the substantial evidence that these men are not supervisors.

1. We accept the proposition that possession of section 2(11) authority is sufficient, and that such authority may be possessed even though it has not been exercised. E. g., N.L.R.B. v. Leland-Gifford Co., 200 F.2d 620, 625 (1st Cir. 1952); N.L.R.B. v. Metropolitan Life Insurance Co., *supra*, at 1173. However, in cases where possession of such authority is disputed, lack of exercise thereof is one factor in determining whether or not the authority is indeed possessed.

Scott presents more difficulty. He is specially trained to perform the critical plating function in the Products Division. During his seven months as an assistant foreman, he once recommended a raise for a fellow worker who soon thereafter received it, and he once prevailed on another employee—by threatened loss of job—not to leave work abruptly in the middle of the day. However, it does not strike us as unusual that the most skilled of three or four men in a shop would command respect from his co-workers and his foreman even though he possessed no "supervisory" powers. Moreover, the quality control work in which he engages concerns the products themselves and only indirectly reflects on his own work and that of the other employees; he is *not* charged with the responsibility of assessing their general capabilities. Compare N.L.R.B. v. Metropolitan Life Insurance Co., *supra* at 1174–1177. As with Morris and Massey, however, his frequent attendance at the "management" meetings lends credibility to the Company's contentions.

■ However, if "deference to expertise" and "substantial evidence" mean anything in this area of labor law, it is that courts should not substitute their judgment in the close cases. We have found only one recent decision where the Board's determination that certain men were not supervisors was reversed by a court of appeals. N.L.R.B. v. Metropolitan Life Insurance Co., *supra;* compare Illinois State Journal-Register, Inc. v. N.L.R.B., 412 F.2d 37 (7th Cir. 1969); N.L.R.B. v. Little Rock Downtowner, Inc., *supra,* 414 F.2d at 1089; N.L.R.B. v. Swift and Company, *supra,* 292 F.2d at 563. *Metropolitan Life* presented a much clearer case of "supervisory" status than do the inconclusive facts regarding Scott. We hold that the Regional Director's determination with regard to these three men is supported by substantial evidence.

■■ Additionally, the Company contends that the Trial Examiner erred in refusing to consider its "new evidence" concerning the status and activities of Scott. We have just recently demonstrated our readiness to require trial examiners to hear such evidence when appropriately presented. N.L.R.B. v. Maine Sugar Industries, Inc., 425 F.2d 942 (1st Cir., May 15, 1970). However, because of the great potential for delay through this avenue, it is not unfair to require the offeror of such belated evidence to spell out what he has and why he could not have produced it at the appropriate time. The Company's first proffer merely stated that Scott had "admittedly withheld information * * concerning his full responsibilities and authority as an assistant foreman", without in any way indicating what that information was. The Company's other offers of proof seem clearly to address matters within its knowledge at the representation hearing, with no explanation as to why such proof was not then offered. The Trial Examiner's refusal, therefore, was not error.

Since all three disputed workers are employees and thus were properly included in the bargaining unit, the Board's order is supported by substantial evidence and we have no occasion to concern ourselves with Scott's activities on behalf of the Union or with the issue raised in N.L.R.B. v. Metropolitan Life Insurance Co., *supra* at 1178.

## II.

Our conclusion above does compel us to confront the issue set forth and discussed in Pepsi-Cola Buffalo Bottling, supra, 409 F.2d at 679–681: whether the National Labor Relations Board must make its own findings of fact before it can conclude that a Company has committed an unfair labor practice by its admitted refusal to bargain. The Board in our case adhered to its "rule against relitigation", which provides in effect that the Board's denial of review of the Regional Director's findings of fact, after review of a summary of the evidence and the law prepared by the Company, is sufficient. 29 C.F.R. § 102.67 (d) (f). The *Pepsi-Cola* decision struck down that part of the rule which allows

the Board to find an unfair labor practice without making its own findings, which holding has apparently been embraced by the Fourth Circuit. N.L.R.B. v. Clement-Blythe Companies, 415 F.2d 78, 82 (4th Cir. 1969). More recently, however, *Pepsi-Cola* has been distinguished by another panel of the Second Circuit, with Judge Friendly expressing his doubts about the *Pepsi-Cola* decision. N.L.R.B. v. Olson Bodies, Inc., 420 F.2d 1187, 1190 (2d Cir. 1970).[2] Having previously cited *Pepsi-Cola* in dicta as the existing law on this point—N.L.R.B. v. Chelsea Clock Co., 411 F.2d 189, 192 (1st Cir. 1969)—we now must decide whether to follow that decision.

Viewing the problem as tabula rasa, there may be some merit to the propositions that discretionary review by the Board is not a sufficient guarantee of the exercise of the expertise attributed to the Board; that section 10(c) of the Act requires the Board to make its own determinations of fact in unfair labor practice cases, see Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 492, 71 S.Ct. 456, 95 L.Ed. 456 (1951); and that Congressional rejection of proposals to delegate final authority to hearing examiners suggests a similar reluctance to delegate such authority to Regional Directors, Pepsi-Cola Buffalo Bottlers, *supra*, 409 F.2d at 681.

But the slate was etched rather clearly, we think, when Congress amended section 3(b) of the Act 29 U.S.C. § 153(b), in 1959. Section 3(b) begins by authorizing the Board to delegate to three or more of its members "any or all of the powers which it may itself exercise", and then, as amended, provides that "[t]he Board is also authorized to delegate to its regional directors its powers under section [9 of the Act] * * * to determine the unit appropriate for the purpose of collective bargaining * * except that * * * the Board may re-

view any action of a regional director * * *." Taken together, the two provisions reflect a Congressional decision to allow the Board—within the specified limits—to permit its delegates to act in its stead.

The Company contends that the section 3(b) amendment *on its face* confines the Regional Directors to the exercise of powers under section 9, and thus that a Regional Director's unit determination pursuant to section 9 can have no effect in a subsequent unfair labor practice proceeding under section 10. That argument, however, overlooks the well established principle that when the Board resolves an issue in a representation proceeding under its section 9 powers,[3] it is *not* required to reconsider the same issue and evidence in the ensuing unfair labor practice proceeding under section 10. *E. g.,* Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); Amalgamated Clothing Workers v. N.L.R.B., 124 U.S.App. D.C. 365, 365 F.2d 898, 902–904 (1966); Riverside Press, Inc. v. N.L.R.B., 415 F.2d 281, 284 (5th Cir. 1969). Since the section 3(b) amendment delegated to the Regional Directors the Board's powers to make unit determinations in representation proceedings, we think it follows that the Director's determination—when not set aside by the Board—is entitled to the same weight in the subsequent proceeding that the Board's own determination would have been accorded.

The legislative history behind the section 3(b) amendment, while not extensive, confirms the breadth of the intended delegation. Senator Goldwater, a member of the Conference Committee which had inserted this amendment which had not appeared in the bills passed by the House and Senate, offered the most complete explanation for the

---

2. *Pepsi-Cola* has also been distinguished in State Farm Mutual Auto Ins. Co. v. N.L.R.B., 413 F.2d 947 (7th Cir. 1969); see also N.L.R.B. v. Process Corp., 412 F.2d 215, 217–218 (7th Cir. 1969).

3. The Board may be called on to make such determinations, either after accepting a Request for Review or after transfer of the case by the Regional Director. *See* 29 C.F.R. § 102.67.

amendment. The purpose was "to expedite final disposition of cases by the Board, by turning over part of its caseload to its regional directors for final determination." It was made clear that the regional directors would be "required to follow the lawful rules, regulations, procedures, and precedents of the Board and to act in all respects as the Board itself would act." As one safeguard against possible abuse of the delegated power, the Board was assured the right of continuous supervision over its delegates, so that the Board could "refuse to delegate authority to handle all or any part of the proceedings in contested representation cases." 2 NLRB Legislative History of the Labor-Management and Disclosure Act of 1959, 1856(2) (1959) (Remarks of Senator Goldwater).[4]

We draw two conclusions from the amendment and this history. First, the primary purpose behind the amendment was the desire to expedite the final disposition of a part of the Board's caseload. The Board delegated its authority over elections and certifications, and, by its "rule against relitigation", decided that all issues finally resolved in such proceedings need not be redetermined in the ensuing unfair labor practice proceeding. Thus, while the Company's interpretation—based on *Pepsi-Cola*—would expedite only elections and certifications but not the disposition of the issues resolved therein, the Board's interpretation makes it unnecessary to redetermine each of those issues, thereby effectuating the Congressional purpose more completely.

Secondly, the section 3(b) delegation of authority to the Regional Directors suggests to us a Congressional judgment that the Regional Directors have an expertise concerning unit determinations sufficiently comparable to the Board's expertise that such determinations may be left primarily to the Regional Directors, subject to the Board's discretionary review. Given this determination that the Board's expertise need only be fully brought to bear on those unit determinations which the Board chooses to review, no unfairness arises from the fact that the Regional Director's determination, after denial of review by the Board, is adopted by the Trial Examiner and the Board in the ensuing unfair labor practice proceeding.

Furthermore, it is important to recognize that Congress did build in a second safeguard against possible abuse by the Regional Directors of the delegated powers. 2 NLRB Legislative History, 1811(3) (Remarks of Congressman Griffin); *ibid.*, 1812(3) (Remarks of Congressman Barden). In both the representation proceeding and the unfair labor practice proceeding, the "ultimate decision" remains with the Board, just as much as in N.L.R.B. v. Duval Jewelry Co., 357 U.S. 1, 8, 78 S.Ct. 1024, 1028, 2 L.Ed.2d 1097 (1957), where the Court upheld the Board's delegation of some of its authority to an agent because "ultimate decision[s] on the merits of all the issues coming before him is left to the Board", although recourse to the Board there, as here, was solely a matter of the Board's discretion.

The Company makes much of the argument that the Board has never reviewed the actual evidentiary record in this case. However, that statement is misleading, for the Board did review the evidence as summarized by the Company in its Request for Review, 29 C.F.R. §

4. We note also that both Congressman Griffin—co-sponsor of the House bill and an active advocate for the Conference version which eventually became law—and Congressman Barden—Chairman of the House Committee on Education and Labor whose earlier bills, H.R. 4473 and 4474, contained the first mention of the section 3(b) amendment—inserted brief explanations of the section 3(b) amendment about ten days prior to final passage. 2 NLRB Legislative History, 1811 (3), 1812(3). Both focused primary attention on the Board's ability to require adherence by its Regional Directors to its rules and precedents. Were the Board additionally expected to make its own findings there would be no reason for this concern to be voiced at all.

102.67(d), and on that basis it concluded that the Company's claims regarding the status of the three assistant foremen presented no substantial issues warranting review. It is difficult to see in what respect a review of the actual record would have added to the Board's comprehension of the Company's contentions.[5] Of course there is nothing to stop the Board from itself reconsidering the evidence adduced in the representation proceeding which is before it in the unfair labor practice proceeding. *See* 29 C.F.R. § 102.48(b).

■ The Fourth Circuit, embracing the *Pepsi-Cola* rule, was most persuaded by the absence of any findings by the Board for the courts of appeals to review. N.L.R.B. v. Clement-Blythe Companies, 415 F.2d at 81–82. However, both Senator Goldwater's remarks and the Board's own rules make clear that the Regional Director is required to follow the same rules as the Board, so that findings of fact by him must be forthcoming. 29 C.F.R. § 102.67(b). Moreover, the Board's rules make clear that the Regional Director's determinations, if adopted by the trial examiner in the unfair labor practice proceeding, will accompany the case first to the Board—29 C.F.R. § 102.45(a)—and then to the appropriate court of appeals. 29 C.F.R. § 101.14; 29 U.S.C. § 10(d). In the case presently before us, the Regional Director's findings of fact which had been adopted by the trial examiner and by the Board were as complete and "reviewable" as any we have received from the Board. We therefore reject the notion that either section 10(c) of the Act or the Administrative Procedure Act, 5 U.S.C. § 557, is offended by the fact that we review the Regional Director's findings which have been adopted by the Board.

■ The Second Circuit's recent effort—N.L.R.B. v. Olson Bodies, Inc., 420 F.2d at 1190—to confine the *Pepsi-Cola* holding seems to us an unsatisfactory compromise: actual Board review and determination is only required where the issue "is difficult and requires a fine-drawn balancing of facts and law". We shrink from the prospect of attempting such characterizations; in the case before us involving the issue of "supervisory" status, the question seemed difficult only with regard to one of the three assistant foremen. Perhaps the Board determined, in its expertise, that the issues here presented were *not* difficult ones when it concluded that the Company's contentions presented no issue warranting review. Are we now to tell the Board that we think it was wrong with regard to one of the three men, that it must review his status because we think the question a close one? Surely that approach would frustrate rather than foster the expeditious disposition of cases intended by Congress. We conclude that the Board's expertise was brought to bear to the extent required by section 3(d) when it denied review of the Regional Director's determination.

We therefore part company with both recent decisions of the Second Circuit, and hold that the procedure followed by the Board in this case satisfies the requirements of the National Labor Relations Act, the Administrative Procedure Act, and the demands of procedural fairness.

■ The Company's final contention is that it should be relieved of its duty to bargain because of a substantial turnover of its employees since the election. The Company's unfair labor practice, its refusal to bargain, having caused this delay since election, the Board's refusal to set aside the election is sustained. Cf.

---

5. The adequacy of this procedure is illustrated by the record before us. The Request for Review contained a complete summary of the relevant evidence, with page references to the transcript of the hearing, as well as a fully documented legal memorandum. In effect, the procedure enables the protestant to marshal its facts and law relevant to the point in issue. If the Board chooses to deny review, its action is one informed by a focused presentation. It cannot fairly be called rubber stamping, with the blind automaticity which the term connotes.

N.L.R.B. v. Better Val-U Stores of Mansfield, Inc., 401 F.2d 491, 494–495 (2d Cir. 1968).

The petition for enforcement is granted.