TRANSPORTATION ENTERPRISES, INC., Petitioner, Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.

No. 79–1472.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1980.

---

1. 18 U.S.C. § 2510(5)(*o*).

2. *U. S. v. Harpel*, 493 F.2d 346 (10th Cir. 1974).

Schoolfield, Smith & Weissert, John M. Weissert, Allen P. Schoolfield, Jr., Dallas, Tex., for petitioner cross–respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Mary Schuette, N.L.R.B., Washington, D.C., for respondent cross–petitioner.

Before BROWN, GEWIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Transportation Enterprises, Inc. (T.E.I.) petitions the court for review of an Order of the National Labor Relations Board (NLRB) which upheld an administrative law judge's findings that T.E.I. had engaged in unfair labor practices which resulted in an unfair labor practice strike. The Board seeks enforcement. T.E.I. was ordered to: (1) pay back–wages to all striking employees who were not immediately rehired, or offered re–employment at the termination of the strike, (2) bargain with the union as the exclusive representative of its employees, and (3) take other designated affirmative action designed to further the policies of the Labor Management Relations Act (the Act). We enforce the Board's order except for that portion relating to the back–pay award which we decline to enforce.

*Facts*

The authorities cited by the parties and independent research reflect that this is a case of first impression with a factual situation which should seldom reoccur. T.E.I., a transit corporation providing various types of bus service, operates a shuttle bus system for students, faculty and staff at the University of Texas at Austin. In 1972 a representation petition, 23–RC–3724, was filed by the Amalgamated Transit Union, Local 1549 (the Union), with the Twenty–Third Region of the NLRB, seeking certification of the shuttle bus drivers as a bargaining unit. The regional office dismissed the petition, declining to exercise the Board's discretionary jurisdiction over disputes which have only a minimal effect on interstate commerce, 29 U.S.C. § 164(c)(1). The dismissal was based on an administrative decision that T.E.I. was essentially a local enterprise engaged primarily in the transportation of students in the aid of the state in the field of education.[1] The Union did not ask the Board to review the decision. For obvious reasons discussed infra, T.E.I. did not seek Board review of the dismissal.[2]

In August of 1973, T.E.I. and the Union entered into a voluntary three–year collective bargaining agreement. Several months prior to its expiration the parties began negotiations which foundered on economic issues. During August of 1976, at the height of the tension between the parties, T.E.I. pursued a course of conduct which was later cited as violative of § 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1).

---

1. It appears 29 U.S.C. § 164(c)(1) was the basis for the jurisdictional standard applied by the NLRB at that time to school bus enterprises and other essentially local businesses aiding the state in the field of education. *Camp Baumann Buses, Inc. and B. S. Buses, Inc.*, 142 NLRB 79, 53 LRRM 1112 (1963); *Raybern Bus Service, Inc.*, 128 NLRB 51, 46 LRRM 1323 (1960).

2. Parenthetically, we note with interest that in the Union's brief to the NLRB in the 1976 representation case, the Union states that "The Board previously declined jurisdiction of this employer in January, 1974, with two Board members dissenting, in 23–RC–3973." There is no further explanation of this statement.

Specifically, T.E.I.: (1) offered drivers beginning work after September 1, 1976, a rate of pay in excess of the rate in the expiring collective bargaining agreement, (2) began offering employment to prospective employees in mid–August, 1976, in anticipation of a strike by the Union, and (3) told employees that they would be fired if they participated in a strike.

The employees struck, as planned, on September 1, 1976. On September 2, the Union filed unfair labor practice charges based on T.E.I.'s actions during August. The regional office, in keeping with its earlier unmodified decision of 1972, declined jurisdiction over the charges. To secure a re–examination of the jurisdictional question, the Union filed a representation petition, 23–RC–4446, on October 4, 1976, simultaneously withdrawing its unfair labor practice charges. A regional hearing on NLRB jurisdiction over T.E.I. was held on October 29, 1976, but no decision was rendered; the case was referred directly to the Board. In February of 1977, the unfair labor practice charges, again based on T.E.I.'s August 1976 activities, were re–filed.

On June 6, 1977, the NLRB ruled in the representation case,[3] asserting jurisdiction over T.E.I.'s entire Austin terminal, including the shuttle bus system serving the University of Texas.[4] The certification election held in July, 1977, resulted in majority support for the Union.

On September 27, 1978, the administrative law judge (ALJ) held a hearing on the unfair labor practice charges. The Board's jurisdiction over the employer was not re–litigated. The ALJ found T.E.I.'s actions in August of 1976 to be unfair labor practices; thus, the strike which followed was an unfair labor practice strike and the protesting employees were entitled to be treated as unfair labor practice strikers. The ALJ entered the order outlined above and the Board affirmed his rulings, findings and conclusions.

### Retroactive Jurisdiction

■ The Board's decision to exercise jurisdiction over T.E.I. in 1977, despite the regional ruling to the contrary in 1972, is appropriate in light of the Board's responsibility to constantly reform its standards on the basis of accumulated experience. *N.L.R.B. v. Weingarten, Inc.*, 420 U.S. 251, 264, 95 S.Ct. 959, 967, 43 L.Ed.2d 171 (1975), citing *Electrical Workers v. N.L.R.B.*, 366 U.S. 667, 674, 81 S.Ct. 1285, 1290, 6 L.Ed.2d 592 (1961). Since the Board's decision on June 6, 1977, T.E.I. has been subject to the Act; however prior to that decision, T.E.I. had the right to rely on the decision of the regional office that it was not subject to the jurisdiction of the NLRB, and not covered by the Act. The NLRB and its regional offices may not render jurisdictional decisions, overrule them *retroactively* and thereby transform an employer's interim behavior, legal when pursued, into illegal unfair labor practices. An employer's conduct after a formal declaration that he is not covered by the Act, and before a re–examination of that issue, cannot subsequently be branded an unfair labor practice subjecting the employer to liability for back–pay.

■ The situation would be quite different if there had been no regional office or Board determination of the NLRB's jurisdiction. In that case an employer who anticipates later exemption from coverage acts at his own peril.[5] An employer who

---

**3.** *Transportation Enterprises, Inc.*, 229 NLRB 174, 95 LRRM 1325 (1977).

**4.** By this time the jurisdictional standard applied to school bus enterprises had been modified by *Columbia Transit Corp.*, 226 NLRB 115, 93 LRRM 1396 (1976). In that case the Board began to look to the definition of the term "employer" found in 29 U.S.C. § 152(2), which excludes states and political subdivisions thereof from NLRB jurisdiction, to determine if

school bus companies share the statutory exemption from coverage. The inquiry revolves around whether the school bus company provides services that the municipality would have to perform otherwise and the degree of control the municipality exercises over the private enterprise.

**5.** We are cited to *N.L.R.B. v. Pease*, 279 F.2d 135 (2d Cir. 1960), and *N.L.R.B. v. Guernsey–Muskingham Electric Co–op, Inc.*, 285 F.2d 8

hazards such a risk and loses, is liable for violations occurring before the declaration of coverage. But when the Board has spoken, either directly or through its regional director, and has declined to exercise its jurisdiction, the employer is justified in concluding that he is not subject to the Act and will not be subjected to a retroactive application.

▆▆▆ That portion of the Board's order which we deny enforcement imposed back–pay liability on T.E.I. for employees not offered re–employment at termination of the strike and employees discharged for strike misconduct. An award of back–pay is authorized under 29 U.S.C. § 160(c) only when the strike is an unfair labor practice strike, *i.e.*, one which was initially motivated, in whole or in part, by the employer's unfair labor practices or one which was aggravated or prolonged by the employer's unlawful acts after the strike began. Back–pay may not be awarded in instances involving only an economic strike. No unfair labor practices, as that term of art is used in § 8 of the Act, 29 U.S.C. § 158, occurred in the case before us. T.E.I. could not technically commit unfair labor practices, as defined by the Act, in August of 1976, because it was not then subject to the Act or the Board's overview. T.E.I. was removed from the NLRB's scrutiny, at least temporarily, by virtue of the regional director's declination of jurisdiction in 1972. Thus, T.E.I.'s tactics in August of 1976, even though they may have been unfair and unduly coercive, were not unfair labor practices and did not convert the employee walk–out into an unfair labor practice strike with its resultant consequences.[6]

Because there was no unfair labor practice strike, T.E.I.'s refusal to reinstate certain employees and its discharge of others for strike misconduct, cannot support a back–pay order. The strike was begun, conducted and ended outside the boundaries of the Labor Management Relations Act. T.E.I.'s employment decisions at the conclusion of the dispute were not unfair labor practices. Rather, they were merely the final acts in an employer–employee altercation conducted outside of the protection of the Act.

The NLRB argues that the regional director's decision in 1972 declining jurisdiction over T.E.I. was merely an "administrative determination" which "hardly constituted an enunciation of fixed Board law or policy." (Brief at p. 25.) "Rather," the Board states, "that determination merely embodied the Regional Director's opinion, based on the state of the facts and law then existing." The ramifications of the natural extension of this argument are staggering. The Board suggests that decisions of its regional offices are merely "opinions" of the regional director entitled to no meaningful weight. Congress obviously felt otherwise for it provided for the delegation of Board authority to regional directors in representation cases. 29 U.S.C. § 153(b). The legislative history of the amendment to § 153(b) in 1959 confirms the breadth of the intended delegation. As the Supreme Court noted in *Magnesium Casting Co. v. N.L.R.B.*, 401 U.S. 137, 141, 91 S.Ct. 599, 601, 27 L.Ed.2d 735 (1971), Senator Goldwater, a member of the Conference Committee which inserted the amendment, stated that its purpose was "to expedite final disposition of cases by the Board, by turning over part of its caseload to regional directors for final determination."[7] The Rules and Regulations of the N.L.R.B., 29 C.F.R. § 102.67, state that the decision of the regional director shall be final, provided, however, that "any party" may seek review within 10 days after service of the decision. The Board will grant a review in only limited

---

6. We do not reach the issue of the impact of an employer's action, which would be unfair labor (6th Cir. 1960), for the proposition that an employer may not rely on the expectation that the Board will decline to exercise jurisdiction. There was no prior decision by the Board or regional office in either case.

practices under the Act, occurring after a new representation petition has been filed seeking a reversal of an earlier denial of jurisdiction and before a formal declaration of jurisdiction. That question remains for another day.

7. 105 Cong.Rec. 19770.

situations, including those in which: (1) there is contrary Board precedent, or an absence of controlling precedent, (2) the regional director's factual conclusion is clearly erroneous and the error prejudices a party, (3) the conduct of the hearing, or any ruling made therein, resulted in prejudicial error, or (4) compelling reasons exist for reconsideration of a Board rule or policy. It would not be logical to expect an employer receiving a favorable ruling on the jurisdictional question at the regional level to appeal to the Board. One must seriously question that employer's right to appeal under the Board's own Rules and Regulations as a prevailing party could hardly point to prejudicial error or conjure up a "compelling reason" justifying the grant of review. Appropriately, only the Union, the losing party in the 1972 hearing before the regional director, had the prerogative to appeal to the Board. It did not do so. Thus, the regional director's opinion was a final determination which bound the parties and upon which they could rely with confidence.

In referring to the import of the decisions of regional directors, the Tenth Circuit, in *N.L.R.B. v. Gold Spot Dairy, Inc.*, 432 F.2d 125, 127 (10th Cir. 1970), stated:

> Under § 3(b), the Board can delegate its unit determination functions to the regional directors, and the decisions of the latter, if not set aside by the Board, are entitled to the same weight as a Board decision. See *Meyer Dairy, Inc. v. National Labor Relations Board*, 10 Cir., 429 F.2d 697, and *National Labor Relations Board v. Magnesium Casting Company*, 1 Cir., 427 F.2d 114.

Our colleagues of the Tenth Circuit also defer to decisions by the regional directors where there is no appeal of the director's ruling. In *N.L.R.B. v. Moran Oil Producing and Drilling Corporation*, 432 F.2d 746 (10th Cir. 1970), a representation case, the regional director determined the bargaining unit. Neither the employer nor the union sought review of this decision. In a subsequent unfair labor practice proceeding the employer contested the regional director's findings in the representation case and requested an evidentiary hearing on that is-

sue. The court refused this request, stating that the decisions of the regional director, if not set aside by the Board, are entitled to the same weight as determinations by the Board. Being convinced of its rationality, we adopt this resolution of the question.

■ Decisions rendered by the regional offices of the NLRB which are not reviewed by the Board, for whatever reasons, are entitled to the same weight and deference as Board decisions, and will be given such unless and until the Board acts in a dispositive manner. Of course the Board and the regional offices are free to reconsider their own decisions in the light of changing circumstances and needs, but a reversal of a previous jurisdictional finding, which was "final," must be applied prospectively only.

■ It is suggested that the instant case is controlled by decisions of the Supreme Court which hold that an employer's good faith belief that he is acting lawfully is not a defense to an unfair labor practice charge. See *N.L.R.B. v. Burnup and Sims, Inc.*, 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964); *International Ladies' Garment Wkrs. U. v. N.L.R.B.*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). These cases are inapposite for in both the employer relied entirely on his own good faith understanding of the law. Under those circumstances, an employer's honest belief that he is complying with the Act is not a defense to an unfair labor practice charge. However, T.E.I.'s conduct was not guided solely by its own or its counsel's views of NLRB jurisdiction. T.E.I. was relying on a formal ruling by the regional office that the Austin shuttle bus service was not covered by the Act. We consider the contention that T.E.I. could rely on this official action only at its peril untenable.

Our colleagues of the Eighth Circuit considered reliance an important factor in refusing enforcement of a retroactive bargaining order issued by the NLRB in a case in which there was no prior Board or regional level adjudication. *Drug Package, Inc. v. N.L.R.B.*, 570 F.2d 1340 (8th Cir.

1978). The employer relied on Board decisions maintaining that bargaining orders would issue prospectively only. *Steel–Fab, Inc.*, 212 NLRB No. 25, 86 LRRM 1474 (1974).[8] The employer's reliance on prior Board decisions was listed as a factor to be considered in determining whether a new Board rule should be applied retroactively. The Supreme Court expressly recognized the propriety of this consideration in *N.L.R.B. v. Bell Aerospace*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), although it found the employer's reliance in that case insignificant. T.E.I.'s reliance in the instant case was substantially more justifiable than that of the employer in *Drug Package* and decidedly not insignificant.

 Although Congress has not spoken directly to the issue of reliance on administrative rulings in the area of the Labor–Management Relations Act, it has done so in other areas. The Fair Labor Standards Act, 29 U.S.C. § 201 et seq., provides that no employer shall be held liable or penalized for minimum wage or overtime violations if he acts in good faith reliance on an administrative regulation, order or ruling even though the regulation, order or ruling is later modified, rescinded or overruled. The good faith defense has carried the day in cases in which the employer relied on his counsel's advice that the employees were not covered by the Act, *Bable v. T. W. Phillips Gas and Oil Company*, 287 F.2d 21 (3d Cir. 1961), and in cases in which the employer relied on an opinion letter from the Wage and Hour Administrator's office stating that certain employees were not covered, *Marshall v. Emersons Ltd.*, 598 F.2d 1346 (4th Cir. 1979). A formal final decision rendered by the regional office of the NLRB ought to be accorded at least the same dignity as a lawyer's opinion or an advisory letter from an administrative agency. Although Congress has not specifically enunciated this rule, we believe it to be implicit in the authority it made delegable to the regional office under § 3(b) of the Act, 29 U.S.C. § 153(b).

There is justifiable concern for the T.E.I. employees who will not receive back–pay because of this decision. It may be suggested that the regional director's 1972 declination of jurisdiction was a "deplorable" mistake, and the wrongdoing employer, rather than the wronged employees, should bear the consequences.[9] Although the human heart sympathizes with the employees who would have been entitled to be returned to their economic status quo if they had struck at a later date (when T.E.I. was made subject to NLRB discretionary jurisdiction), T.E.I.'s actions were not "wrongful" in August of 1976, in terms of the Act, and T.E.I. may not be penalized by the imposition of a back–pay award.

The facts of this case sufficiently distinguish it from the majority of labor–management disputes to allay any fear that it may be extended inordinately. The unusual factual situation and the inequitable nature of the back–pay award compel our decision. We conclude that an employer, or a union, party to a matter, may rely on formal decisions and orders of the Board, and may rely on decisions and formal expressions by regional offices, in matters in which they are parties, until such time as the regional office changes its announced

---

8. The *Steel–Fab* case was overruled in *Trading Port, Inc.*, 219 NLRB No. 76, 89 LRRM 1565 (1975), decided after the events in *Drug Package* took place. The court refused to apply the retroactivity doctrine of *Trading Port* in *Drug Package* because the two cases were distinguishable and because of the employer's reliance on earlier decisions of the Board in *Drug Package*.

9. *See N.L.R.B. v. Rutter–Rex Manufacturing Co.*, 396 U.S. 258, 265, 90 S.Ct. 417, 421, 24 L.Ed.2d 405 (1969). In *Rutter–Rex* the Board's deplorable mistake was an unconscionable delay between the date of the unfair labor practice ruling and the conclusion of the compliance stage of the proceedings which resulted in a substantial increase in the employer's back-pay liability. The unfair labor practice decision did not list the employees that were to be reinstated. The employer exercised its own judgment as to the reinstatements, being fully aware that the matter remained open pending the compliance proceeding. The Court specifically said that, on the basis of the facts presented, addressing the issue of estoppel was unnecessary. *Rutter–Rex* is inapposite.

position or there is dispositive action by the Board, the Congress or the courts.

Accordingly, the portion of the Board's order awarding back–pay is reversed and denied enforcement. The remainder of the order is enforced.

ENFORCED in part, ENFORCEMENT DENIED in part.