FEDERAL TRADE COMMISSION,
Appellant,

v.

WEYERHAEUSER COMPANY et al.

No. 81–1346.

United States Court of Appeals,
District of Columbia Circuit.

April 7, 1981.

As Amended June 1, 1981.

---

On Appellant's Motion for Injunction Pending Appeal (D.C.Civil Action No. 80–03175).

Before MacKINNON, MIKVA and EDWARDS, Circuit Judges.

### ORDER

PER CURIAM.

On consideration of appellant's motion for injunction pending appeal, and of the responses filed with respect thereto, and for the reasons set forth in the attached *per curiam* opinion to be published at a later date, it is

ORDERED by the Court that appellant's motion for injunction pending appeal is granted. It is

FURTHER ORDERED by the Court, *sua sponte*, that the parties are directed to return to the *status quo* existing at the time when the motion for injunctive relief was denied in the District Court. It is

FURTHER ORDERED by the Court that this case will be expedited on the merits.

Opinion PER CURIAM.

Dissenting opinion filed by *Circuit Judge* MacKINNON.

PER CURIAM.

This case is before us on a motion of the Federal Trade Commission for injunctive relief pending appeal. For reasons set forth below, we grant the motion for injunctive relief pending appeal. In addition, we order the parties to return to the *status quo* existing on March 25, 1981, just prior to the time when the District Court denied the FTC's motion for injunctive relief.

The FTC asked the District Court to enjoin the proposed acquisition by Weyerhaeuser Company and its wholly-owned subsidiary, Weybuy, Inc. of certain assets of Menasha Corporation. Weyerhaeuser is the seventh largest producer of corrugating medium on the West Coast, and the largest producer of corrugated containers in the United States; Menasha is the third largest producer of corrugating medium on the West Coast. District Court Findings of Fact and Conclusions of Law, ¶¶ 5, 7. The District Court Judge found that the proposed merger "will significantly increase concentration in the market; it will result in the elimination of a substantial competitor; and it will increase the likelihood of collusion." *Id.*, ¶ 42. Judge Pratt thus concluded that "the Commission has established a likelihood of success on the merits." *Id.*, ¶ 56.

Despite these findings, the District Court determined that private equities favoring defendant Menasha's shareholders militated against the issuance of a preliminary injunction. *Id.*, ¶¶ 57–56. Because Menasha is a privately held, family-owned corporation, its shareholders have few opportunities to realize the value of their stock. *Id.*, ¶ 58. The District Court concluded that the benefits to Menasha and its shareholders were "important equities favoring denial of a preliminary injunction." *Id.*, ¶ 65.

■ We believe that there are significant reasons to suggest that the District Court misapplied Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), and misinterpreted the recent decision of this court in *FTC v. Exxon Corp.*, 636 F.2d

1336 (D.C.Cir.1980). In essence, the District Court has ruled that if the shareholders of a company to be acquired stand to gain substantial financial benefits from a proposed transaction, that transaction should be allowed to proceed—subject only to a "hold separate" order—*even though found in all likelihood to be unlawful.* We do not so read Section 13(b). While we agree that private equities may be considered in a motion for injunctive relief, we do not believe that those equities may be given *conclusive effect* at the nearly complete expense of the public interest also present. As a result, we find that there is a strong likelihood that the FTC will prevail on the merits of its appeal.

■ A *strong* showing has been made that the merger in this case violates Section 7 of the Clayton Act. Therefore, this case is unlike the decision in *Exxon, supra,* where the District Court found that the FTC had failed to show that "the *public interest* entitle[d] it to the [preliminary injunction] relief sought under Section 13(b)" (emphasis added). No such finding was made by the District Court in this case. Indeed, the District Court found that "eventual divestiture would not prevent interim competitive harm during the pendency of the FTC administrative proceedings," and sought to mitigate this harm by entering its "hold separate" order. Findings of Fact and Conclusions of Law, ¶¶ 71–73. But it is far from clear that a "hold separate" order will be adequate, and the financial interest of Menasha shareholders is an insufficient reason for preferring such an order to a preliminary injunction. The FTC has met the heavy standard set forth in *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir.1958), and we accordingly grant the FTC's motion for an injunction pending appeal. We refer this case to a merits panel to determine on an expedited basis whether the District Court abused its discretion in denying the request for a preliminary injunction.

Enjoining the proposed acquisition is made more difficult, however, by the parties' determination to present the merger to this court as a *fait accompli.* On the evening of March 25, 1981, only a few hours after the District Court had denied the preliminary injunction, Weyerhaeuser and Menasha took the formal steps necessary to consummate their transaction before this court could grant a stay. Weyerhaeuser admits:

> Weyerhaeuser and Menasha, advised by counsel that there was no injunction pending appeal [granted by the District Court], then undertook to decide whether they would proceed to consummate the merger. *While that was being determined* counsel for Weyerhaeuser were contacted by Mr. Daniel Cathey of the office of the Clerk of this Court [of Appeals] and were told that the FTC would, upon filing papers at the Courthouse, seek an administrative injunction from this Court.

Defendants' Memorandum in Opposition to the FTC's motion for Injunctive Relief Pending Appeal, p. 10 (emphasis supplied).

■ The defendants acted at their peril in completing the act that the FTC sought to enjoin. *See Jones v. SEC,* 298 U.S. 1, 18, 56 S.Ct. 654, 658, 80 L.Ed. 1015 (1936). It is well established that "where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the *status quo." Porter v. Lee,* 328 U.S. 246, 251, 66 S.Ct. 1096, 1099. 90 L.Ed. 1199 (1956). *See Industrial Bank of Washington v. Tobriner,* 405 F.2d 1321, 1323 (D.C.Cir.1968); *Ramsburg v. American Investment Co.,* 231 F.2d 333 (7th Cir. 1956) (mandatory injunction may issue to dissolve merger completed on same day motion for temporary injunction denied, where parties had notice that denial of injunction would be appealed). Moreover, in *Ramsburg,* the court noted that such an injunction has issued in cases "without considering the ultimate rights of the parties in the controversy." 231 F.2d at 337. Given the circumstances of this case and our disposition of the FTC's motion, we believe it appropriate to order the parties to return to the *status quo* existing at the time when the motion for injunctive relief was denied in the District Court. The necessary parties, appellees Weyerhaeuser, Weybuy, and Menasha, are all present before this court.

We acknowledge that there is some possibility, albeit speculative, that shareholders of appellee Menasha may be harmed if the proposed merger is barred by injunctive relief. In this case, however, such harm results from the strong showing that has been made that the proposed transaction is unlawful, and not from the issuance of an injunction. Furthermore, whatever need

Menasha shareholders may have to liquify their assets, that need cannot be satisfied through a potentially illegal merger that is subject to the strictures of Section 13(b). Additionally, our order requires expedition to ensure a prompt resolution of this matter. We believe that the standards of *Virginia Petroleum Jobbers* have been met in this case, and that an injunction pending appeal must issue. The actions of the parties cannot be allowed to frustrate the public interest by completing a transaction of such dubious validity.

MacKINNON, Circuit Judge (dissenting):

The majority concludes that "[t]he FTC has met the heavy standard set forth in *Virginia Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958) ....," Op. at 741, but ignores facts essential to a correct application of that standard and in effect erroneously places the burden of persuasion on the defendants.

Under *Virginia Jobbers*, the FTC must justify the extraordinary relief of an injunction pending appeal on the basis of four factors:

(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? ... (2) Has the petitioner shown that without such relief, it will be irreparably injured? ... (3) would the issuance of a stay substantially harm other parties interested in the proceedings? ... (4) Where lies the public interest? .... The public interest may, of course, have many faces .... We must determine, these many facets considered, how the court's action serves the public best.

In my view the majority errs by (1) exaggerating the strength of the FTC's case by not considering all of the criteria under which it should be judged, (2) ignoring the FTC's inability to demonstrate irreparable harm, (3) excessively discounting the substantial harm that granting interim relief may do to the shareholders of Menasha, and (4) being unduly selective in determining which facets of the public interest it will consider.

*Likelihood of success on the merits*

Was there a "strong showing that [the FTC] is likely to prevail on the merits *of its appeal*"? *Virginia Jobbers, supra,* 259 F.2d at 925 (emphasis added). The majority re-

lies heavily, if not exclusively, on its conclusion that "[a] *strong* showing has been made that the merger in this case violates Section 7 of the Clayton Act." Op. at 741. But the Commission's appeal is not from an adjudication of the legality of a merger under Section 7. It is an appeal from a denial of injunctive relief under Section 13(b) of the Federal Trade Commission Act, which invokes not simply "the Commission's likelihood of ultimate success [here, under Section 7]," *but also* a "weighing [of] the equities" by the district court. It was from a weighing of the equities that Judge Pratt determined to deny the Commission's request for a Section 13(b) injunction notwithstanding its likelihood of ultimate success in an FTC proceeding brought to enforce Section 7. Since the equities played a decisive role in the district court's decision, they cannot be ignored under *Virginia Jobbers* in evaluating the Commission's likelihood of success on appeal.

Judge Pratt identified the equities as follows:

The evidence shows three equitable interests which would be advanced by this acquisition: (1) the interest of Menasha's shareholders in restructuring the firm in a way that permits them to redeem their stock; (2) the almost certain increase of linerboard supply through construction of a new liner mill at Menasha's undeveloped mill site; and (3) the increase of employment in the North Bend community which is suffering acutely from the decline in the housing market.

District Court Findings of Fact and Conclusions of Law ¶ 57. He then elaborated: Menasha is a family-owned and operated company whose shareholders have no market opportunity to realize the value of their stock; it is infeasible to trade it publicly. The stock is the

sole substantial asset for all but one shareholder [, and] [t]he problems presented by the stock's lack of liquidity have become acute with the passage of generations and the decrease in the number of shares held by individual shareholders.

*Id.* ¶ 58. The Weyerhaeuser acquisition provided a solution to this serious problem. Moreover, the acquisition would have freed Menasha "to expand and improve efficiency at [its] Otsego mill on an expedited basis." *Id.* ¶ 64.

made that the merger in *id.* ¶ 58. The Weyerhaeuser acquisition provided a solution to this serious problem. Moreover, the acquisition would have freed Menasha "to expand and improve efficiency at [its] Otsego mill on an expedited basis." *Id.* ¶ 64.

The court also discussed the "public equities":

Consummation of this acquisition and Weyerhauser's subsequent development of a linerboard mill at the vacant North Bend mill site would advance two other important interests: (1) increasing linerboard supply on the West Coast, and for exports; and (2) increasing employment in the North Bend area. Menasha is unwilling to sell *only* the mill site. Although Weyerhaeuser would not be bound to develop the site once it had been acquired, there would be strong economic incentives to do so. Consequently, the court finds that the acquisition will likely increase liner supply and permanent employment in the North Bend area, but that the timing and magnitude of these benefits is uncertain.

*Id.* ¶ 66.

Finally, the district court noted:

In the acquisition context, it is generally preferable that the acquiring company bear the risk of resultant antitrust litigation, including the risk that the value of the assets acquired will decline. *FTC v. Exxon Corp.,* 636 F.2d 1136, 1143 n. 26. Entry of a preliminary injunction here would shift this risk to the Menasha shareholders, who are least able to bear it. (The financial risk to them as Weyerhaeuser stockholders from ultimate divestiture is far smaller because of the large scale of Weyerhaeuser's order operations.)

*Id.* ¶ 70.

In light of these findings by the district court, I cannot agree that the district court relied solely on the interest of the Menasha shareholders, as the majority suggests, see Op. at 741. The court also relied on the public equities in increasing product output and providing employment. All of the equities, public and private, deserve weight, and convince me that the FTC does not have an unassailable case.

*Irreparable injury absent injunction*

It is not enough to conclude, as the majority does, that "it is far from clear that a 'hold separate' order will be adequate ...." Op. at 741. That phrase confounds the placement of burdens. It was the *FTC*, not defendants, who bore the burden on this question. The FTC was required to prove irreparable injury, yet failed to do so. *Virginia Jobbers, supra,* 259 F.2d at 925, 926.

Judge Pratt found that eventual divestiture would prevent any long run harm to the FTC's interest in enforcing the antitrust laws, and that a "hold separate" order would prevent any anticompetitive harm in the interim, *i. e.,* until final adjudication of the validity of the proposed merger. Findings and Conclusions ¶¶ 71, 73. The hold separate order would

assur[e] that the North Bend mill's management, supply, production, sales, and pricing decisions are insulated from Weyerhaeuser, and assur[e] that the mill is guaranteed sufficient capital to maintain its operations and expand its capacity as demand requires.

*Id.* ¶ 73. The district court's order gave the FTC 30 days to "propose such additional measures as may be necessary to insulate the North Bend mill's supply, sales, pricing, production and other management decisions from Weyerhaeuser ... during the pendency of the Commission proceedings." Order at 2-3.

It was up to the FTC to show in this court in its motion for interim relief that the district court's hold separate order would be ineffective. It has made no serious attempt to do so and thus has failed to show irreparable harm. For this reason alone an injunction pending appeal is unwarranted.

*Substantial harm to interested parties*

The interim injury suffered by Menasha shareholders has already been noted. Further harm to them inheres in the fact that the March 31 deadline the defendants agreed to has now slipped by, relieving Weyerhaeuser of its obligation to purchase the assets of Menasha. This generates the possibility that Menasha shareholders will never be able to sell their shares at anything near their value. The FTC's lack of irreparable injury is particularly prominent in these circumstances, where this court's injunction may well have the effect of giving the FTC the complete relief it seeks.

*Where lies the public interest?*

If the merger is determined to be invalid Weyerhaeuser can be forced to divest itself of its Menasha assets. These assets perhaps will have to be sold at a loss, but that is a risk Weyerhaeuser has been willing to assume. And, again assuming the merger will be held invalid, there need be no anticompetitive harm in the interim, for the district court ordered Weyerhaeuser to maintain the acquired Menasha assets as a "separate and ongoing entity." Order at 2. The FTC was free to propose supplemental directives to implement the purpose of the order.

If, on the other hand, the merger would be adjudicated valid, the interim relief ordered by the majority ensures that Weyerhaeuser will not be investing in the new mill facilities for some time, and reduces the likelihood that the beneficial effects of the merger will ever come to pass.

The FTC has shown at most a likelihood of ultimate success on its Section 7 claim. This is insufficient to warrant the extraordinary relief of an injunction pending its appeal. I therefore dissent.