**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAV–ON DRUGS, INC., Respondent.**

**CA No. 81–7428.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1984.

Decided March 21, 1984.

Peter Winkler, Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Thomas S. Kerrigan, Timothy F. Ryan, McLaughlin & Irvin, Los Angeles, Cal., for respondent.

Before BROWNING, Chief Judge, CHOY, GOODWIN, HUG, SKOPIL, SCHROEDER, FLETCHER, FARRIS, FERGUSON, CANBY, and BOOCHEVER, Circuit Judges.

FARRIS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order requiring Sav-On Drugs, Inc. to reinstate and pay back wages to 61 discharged employees. The panel refused to enforce the order. *NLRB v. Sav-On Drugs, Inc.,* 704 F.2d 1147 (9th Cir.1983). We reconsidered the petition en banc. We order enforcement.

## FACTS

Sav-On operates a chain of retail drug stores in California, Texas and Nevada. In mid-1978, employees in approximately three-quarters of its California stores were covered by identical collective bargaining agreements with locals of the United Food and Commercial Workers International Union, AFL–CIO. These agreements had an expiration date of June 30, 1978, and covered all employees in the stores, including pharmacists and pharmacist managers.

Beginning May 1, 1978, the Guild for Professional Pharmacists, seeking to represent all pharmacists employed by Sav-On in its California stores, filed petitions with the National Labor Relations Board. The regional director dismissed the petitions on the ground that pharmacist managers were supervisors and that the Guild was not a labor organization within the meaning of the National Labor Relations Act. *See* 29 U.S.C. § 152(5) and (11). The Guild filed a timely request for review of the decision.

On November 6, 1978, the Guild sent a letter to Sav-On, seeking wage increases for the pharmacists and threatening to strike if its demands were not met. On November 8, the Board granted the Guild's request for review of the regional director's decision. That same day, Sav-On and the Food and Commercial Workers Union agreed to extend their expired agreement to Sav-On employees who were not pharmacist managers.

On January 5, 1979, Sav-On discharged two pharmacist managers because of their activities with the Guild. The Guild filed unfair labor practice charges. The pharmacist managers were not reinstated. Fifty-nine pharmacists and pharmacist managers struck to protest the discharges. Sav-On discharged all 59 and has refused to reinstate them.

On July 31, 1979, the Board issued its decision on review and reversed the regional director's decision. The Board found that the pharmacist managers were not supervisors and that the Guild was a labor organization within the meaning of the Act. The Board ordered an election. We en-

forced that order. *NLRB v. Sav-On Drugs, Inc.,* 709 F.2d 536 (9th Cir.1983).

In the pending unfair labor practice case, the Board found that Sav-On violated sections 8(a)(1) and 8(a)(3) of the Act by discharging the two pharmacist managers because of their union activities and by discharging the 59 employees who struck to protest the discharges. The Board ordered Sav-On to reinstate and pay back wages to all of the discharged employees and to cease and desist from the unfair labor practices.

## ANALYSIS

■ Sav-On recognizes that an employer violates sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act when it discharges employees because of their union activities. *See NLRB v. Fort Vancouver Plywood Co.,* 604 F.2d 596, 599–600 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). Sav-On argues instead that in discharging the two pharmacist managers, it acted in reliance on the regional director's determination that pharmacist managers were supervisors. Sav-On contends that its actions were insulated from the Board order reversing the regional director's decision because the Guild failed to seek a stay and thus the regional director's decision was final. We reject the argument.

Section 102.67(b) of the Board's Rules and Regulations provides:

> The decision of the regional director shall be final: *Provided, however,* That within 10 days after service thereof any party may file a request for review with the Board in Washington, D.C.

29 C.F.R. § 102.67(b) (1983).

■ The regional director's decision was not a final decision on which the parties could rely. Where levels of review are provided, decisions may be reversed. A prevailing party at trial acts at its peril if it proceeds before the appeal is concluded. *See W.R. Grace and Co. v. Local Union 759,* —— U.S. ——, 103 S.Ct. 2177, 2184–86, 76 L.Ed.2d 298 (1983); *Federal Trade Commission v. Weyerhaeuser Co.,* 648 F.2d 739, 741 (D.C.Cir.1981). The absence of a stay does not vary the rule.

Sav-On is not exempt from this general rule. It had more notice than a litigant ordinarily has. When Sav-On discharged the pharmacist managers, it knew that the Guild had requested review of the regional director's decision and that the Board had granted the request. Section 102.67(c) of the Board's Rules and Regulations provides that "[t]he Board will grant a request for review only where compelling reasons exist . . . ." 29 C.F.R. § 102.67(c) (1983).[1] Once the Board granted the request, there was a substantial possibility that the regional director's decision would be reversed. Under these circumstances, Sav-On could not reasonably rely on the regional director's decision.

Sav-On's reliance on *Transportation Enterprises, Inc. v. NLRB,* 630 F.2d 421 (5th Cir.1980), is misplaced. There, a regional director had dismissed a union's representation petition on the ground that the employer was not subject to the jurisdiction of the National Labor Relations Board. Four years later, the Board asserted jurisdiction and awarded back pay to employees not rehired after a strike. The Fifth Circuit declined to enforce the award because the union had not requested review of the regional director's earlier decision and thus it was a final determination on which the employer could reasonably rely. Sav-On,

---

1. Section 102.67(c) further provides:

   Accordingly, a request for review may be granted only upon one or more of the following grounds:

   (1) That a substantial question of law or policy is raised because of (i) the absence of, or (ii) a departure from, officially reported Board precedent.

   (2) That the regional director's decision on a substantial factual issue is clearly erroneous on the record and such error prejudicially affects the rights of a party.

   (3) That the conduct of the hearing or any ruling made in connection with the proceeding has resulted in prejudicial error.

   (4) That there are compelling reasons for reconsideration of an important Board rule or policy.

however, acted with the knowledge that the regional director's decision would be reviewed and could be reversed. It could not reasonably rely on that decision.

■ Sav-On further argues that, under section 3(b) of the Act, its reliance was reasonable because the Guild failed to seek a stay. Section 3(b) provides that a request for review "shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director." 29 U.S.C. § 153(b). The purpose of this provision is to limit delay caused by appeals. *See* 2 NLRB, LEGISLATIVE HISTORY OF THE LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959, at 1750 (1959) (quoting remarks of Rep. Kearns, 105 Cong.Rec. 8873). When the regional director orders the parties to act, the parties must do so, regardless of the pendency of an appeal. However, section 3(b) was not intended to preclude the enforcement of a Board order reversing a regional director's decision when no stay has been granted.

Moreover, as the administrative law judge noted, the regional director's decision did not order any party to act. It merely dismissed the Guild's representation petition. Since the regional director's decision did not order any action to be taken, there was nothing to stay. The failure of the Guild to request a stay is therefore irrelevant.

■ Sav-On contends that it was compelled to bargain with the Union in the interim in order to avoid "refusal to bargain" charges under section 8(a)(5) of the Act. 29 U.S.C. § 158(a)(5). This argument has no bearing on the question of Sav-On's discharge of the two pharmacist managers. Sav-On could properly refuse to bargain with the Union over the rights of the contested pharmacist managers, while it continued to bargain with respect to employees remaining in the unit. *See Walla Walla Union-Bulletin v. NLRB,* 631 F.2d 609, 615 (9th Cir.1980); *Sakrete of Northern California, Inc. v. NLRB,* 332 F.2d 902, 908 (9th Cir.1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965). If sufficient

evidence indicated that the Union no longer commanded majority support of the pharmacists, Sav-On might have refused to bargain over the pharmacists' rights as well. *See Automated Business Systems v. NLRB,* 497 F.2d 262, 270 (6th Cir.1974); *Allied Industrial Workers v. NLRB,* 476 F.2d 868, 881–82 (D.C.Cir.1973). In any event, Sav-On could have insulated itself from unfair labor practice charges by disavowing responsibility for the organizing activities of the pharmacist managers, and maintaining strict neutrality until the Board determined which union, if any, would represent them. *See NLRB v. Signal Oil & Gas Co.,* 303 F.2d 785, 788 (5th Cir.1962); *National Carbon Division, Union Carbide & Carbon Corp.,* 105 N.L.R.B. 441, 443 (1953), *modifying* 100 N.L.R.B. 689 (1952).

■ Sav-On also argues that it had a right to discharge the 59 protest strikers because the strike violated the no-strike clause in the collective bargaining agreement with the union. This argument is without merit. First, only about half of the strikers were covered by the collective bargaining agreement. The others either were employed at non-union stores or were pharmacist managers excluded from coverage under the agreement. Second, those strikers who were covered by the agreement did not breach the no-strike clause. A no-strike obligation is the *quid pro quo* for the employer's obligation to submit disputes to arbitration. *Boys Market, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 248, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199 (1970). Absent explicit agreement to the contrary, the no-strike obligation is limited to disputes over arbitrable issues. *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 382, 94 S.Ct. 629, 639, 38 L.Ed.2d 583 (1974); *NLRB v. Southern California Edison Co.,* 646 F.2d 1352, 1367 (9th Cir. 1981). Here, the Board found that the no-strike clause limited the obligation not to strike to matters subject to arbitration. This finding is reasonable and consistent with the policies of the Act, and thus entitled to deference. *Southern California Edison Co.,* 646 F.2d at 1366. The dispute

which gave rise to the strike was Sav-On's termination of the two pharmacist managers. This dispute was not subject to arbitration because the extended agreement between Sav-On and the union excluded the pharmacist managers. Because the strike did not violate the no-strike clause, Sav-On violated sections 8(a)(1) and 8(a)(3) by discharging the strikers and refusing to reinstate them.

This cause was submitted at the hearing on a stipulation of facts entered into by all parties. The stipulation of facts incorporated certain exhibits and was the basis of the Board's ruling. We have carefully reviewed that stipulation. We are satisfied that this is a routine case of enforcement of a Board order which is based upon findings supported by substantial evidence in the record. *See Westwood Import Co. v. NLRB,* 681 F.2d 664, 666 (9th Cir.1982). The order is ENFORCED.

CHOY, Circuit Judge, dissenting:

The power of the United States Court of Appeals to enforce an order of the NLRB is equitable in nature and should be exercised only when consistent with principles of equity. *C–B Buick, Inc. v. NLRB,* 506 F.2d 1086, 1092 (3d Cir.1974); *Morrison-Knudsen Co. v. NLRB,* 275 F.2d 914, 918 (2d Cir. 1960); *NLRB v. Kingston Cake Co.,* 206 F.2d 604, 611 (3d Cir.1953). We review Board orders for consistency with the National Labor Relations Act (NLRA), and we generally give the Board's interpretation of the Act considerable deference. *Precision Striping, Inc. v. NLRB,* 642 F.2d 1144, 1146 (9th Cir.1981). This case, however, does not involve administrative expertise in the construction of the NLRA; it involves equity, purely and simply, which judges are just as competent to apply. *See Kingston Cake Co.,* 206 F.2d at 611; *see also Thompson v. Clifford,* 408 F.2d 154, 167 (D.C.Cir.1968). Furthermore, an administrative interpretation is entitled to no deference if it is not consistent with the congressional purpose. *E.g., Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–340, 38 L.Ed.2d 287 (1973). In this case, an employer was placed in a dilemma by a union openly defying the decision of an official acting within his lawful authority. The Board's order would severely punish the employer and richly reward the union for its recalcitrance. Because I believe that the NLRB's order offends principles of equity and the congressional purpose of section 3(b) of the Act, I would not enforce it. Accordingly, I dissent.

## I.  LEGISLATIVE HISTORY

Section 701(b) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), Pub.L. No. 86–257, 73 Stat. 519, 542, first authorized the Board to delegate some of its decision-making power to its regional directors. Neither the Landrum-Griffin (House) nor Taft-Hartley (Senate) versions of the act contained this section, but it was part of a compromise reached in conference about the so-called "no man's land" title. In the Landrum-Griffin version backed by the Administration, state labor boards and courts could assume jurisdiction over and apply state law to cases declined by the Board. The Senate version would allow only state labor boards (then existing in only 12 states) to assume jurisdiction over such cases, and those boards would have to apply federal law. The conference committee adopted the House version, but it inserted provisions to ensure that the NLRB would not cut back on its jurisdictional standards and to help the NLRB expedite case processing by delegating certain of its powers to regional directors. 105 Cong.Rec. 18,705 (remarks of Sen. Goldwater) (summarizing conference action), *reprinted in* 2 NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959,* at 1454 (1959), *and in* 105 Cong.Rec. 18,022 (remarks of Rep. Griffin); *see Magnesium Casting Co. v. NLRB,* 401 U.S. 137, 141, 91 S.Ct. 599, 601, 27 L.Ed.2d 735 (1971) (discussing intent of provision delegating authority); 105 Cong.Rec. 18,128 (1959) (remarks of Rep. Barden) (same), *reprinted in* 2 NLRB, *supra,* at 1714. Section 701(b) may have been modeled in

part on H.R. 7265, 86th Cong., 1st Sess. § 104(b)(1) (1959), which Rep. Kearns, one of the conferees, had introduced earlier. After introducing that bill, Rep. Kearns explained the intent of that provision:

> The Board is authorized to delegate to its regional directors the processing of representation cases. Such cases account for more than 50 percent of the Board's workload. During the early years of the NLRA, the Board undoubtedly needed to handle these cases itself. More than 20 years later the rules of decision are well established and nearly all of the cases are decided on established precedent. To make certain Board policy is followed by regional directors, provision is made for appeal to the Board. *Action of the Director is not stayed pending the appeal, however, to avoid the taking of an appeal as a delaying technique.* This change of procedure will materially decrease the time spent in processing representation cases and eliminate advantages which parties have long sought to obtain by delays.

2 NLRB, *supra,* at 1749–50 (emphasis added), *reprinted in* 105 Cong.Rec. 8873–74.

## II. BACKGROUND

Sav-On operates a chain of drug stores. The United Food and Commercial Workers (UFCW) unionized most of these stores. The UFCW was certified to represent all employees in the unionized stores, including the pharmacists and pharmacist managers.

In 1978, when the UFCW collective bargaining agreements expired, the Guild for Professional Pharmacists sought to represent the pharmacists and pharmacist managers. The Guild filed representation election petitions, but the regional director dismissed them on Sept. 26, 1978, holding that "pharmacist managers" were "supervisors" within the meaning of § 2(11) of the NLRA, and that the Guild, being dominated by supervisors, was not a "union" within the meaning of § 2(5). The Guild petitioned the Board for review on Oct. 6, but sought no stay of the dismissal.

In the meantime, the UFCW demanded that Sav-On resume negotiations for a new collective agreement. Sav-On complied and signed a new agreement with the UFCW on Nov. 8 that did not cover pharmacist managers. On the same day the Board granted the Guild's request for review.

The Guild, however, disregarded the regional director's dismissal. They demanded wage increases for the pharmacists and threatened to strike if their demands were not met. Two pharmacist managers, Kunysz and Fogel, were active in the Guild's efforts. After three months had passed and much pressure had been put on Sav-On by the UFCW and the Guild, Sav-On fired Kunysz and Fogel because of their activities on behalf of the Guild. The Guild immediately filed unfair labor practice charges and struck Sav-On. Sav-On discharged all 59 strikers and has reinstated none of them to date.

Six months later, the Board issued its decision reversing the district director's determinations. As a consequence of that decision, the Board found that the Guild's strike was an unfair labor practice strike, entitling all strikers to reinstatement and a half year's backpay. Sav-On then took the matter to this court, contending that it had the right to rely on the regional director's determination in the absence of a stay order from the Board. We refused to enforce the Board's order. 704 F.2d 1147 (9th Cir.1983).

## III. RIGHT TO RELY ON REGIONAL DIRECTOR'S DETERMINATION

I believe that Sav-On was entitled to rely on the regional director's determination in the absence of a stay issued by the Board. Section 3(b) of the Act states that review by the Board of a regional director's decision "shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director." 29 U.S.C. § 153(b).

The Board argues that section 3(b) applies only when the regional director orders the parties to take some affirmative action—most often, to proceed to an election—because a stay of an order or decree is

appropriate only when the order or decree "commands or permits some act to be done." 4A C.J.S. *Appeal & Error* § 632, at 429 (1957). The Board argues that dismissal of a representation petition leaves nothing to stay. In a technical sense, the Board is correct. The regional director did not order the parties to take any affirmative action. The regional director's power to act, however, is not limited to ordering affirmative action. Under Board regulations, the regional director is empowered

> to determine the unit appropriate for the purpose of collective bargaining, to determine whether a question concerning representation exists, and to direct an election, dismiss the petition, or make other disposition of the matter.

29 C.F.R. § 102.67(a). In making some of these determinations, the regional director will neither command nor permit anything to be done directly, but collateral consequences flowing from those determinations will certainly require or permit the parties to act. Here, in dismissing the representation petition, the regional director (1) permitted the UFCW and Sav-On to excise pharmacy supervisors from coverage under the collective bargaining agreement without exposing the union to liability under section 301 of the LMRDA for breach of the duty of fair representation; (2) permitted Sav-On management to refuse to recognize the Guild as bargaining representative for the pharmacists and pharmacy supervisors; (3) required Sav-On to continue bargaining in good faith with the UFCW with respect to the pharmacists; and (4) required Sav-On at least to disclaim responsibility for Kunysz and Fogel's Guild activities or risk exposure to an unlawful assistance charge under section 8(a)(2) of the NLRA, 29 U.S.C. § 158(a)(2).

It is true that the regional director's dismissal of a representation petition would not necessarily bind the courts and the Board in any subsequent unfair labor practice proceeding or section 301 suit. If the regional director's decision were allowed to become final, however, courts and possibly the Board would defer to it in the same manner as they would defer to a Board

decision, *see NLRB v. Magnesium Casting Co.,* 427 F.2d 114, 119–20 (1st Cir.1970), *aff'd,* 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735 (1971), and the Board would be to some extent bound by the regional director's determination in that it could not, in reversing a regional director, declare the employer's conduct illegal retroactively, *see Transportation Enterprises v. NLRB,* 630 F.2d 421, 424–27 (5th Cir.1980). Hence, even a dismissal of a representation petition would have collateral consequences permitting or mandating actions and thus would be an appropriate subject of a Board stay.

The Board attempts to blunt the force of this argument. First, it suggests that Sav-On should not have bargained with either union while the appeal of the regional director's decision was pending. The Board's view, however, encourages parties who lose at the regional director level to appeal and thereby delay implementation of the regional director's order. Such an incentive to appeal runs counter to the legislative intent to avoid the taking of an appeal as a delaying technique. This case is a perfect illustration of this incentive. Under the Board's view of the statute, the Guild's appeal to the Board enabled it to flout the regional director's decision with impunity. Without that appeal, the Guild's strike would have been in derogation of the certified bargaining representative. As such, it would be an unprotected "wildcat" strike under *NLRB v. Tanner Motor Livery, Ltd.,* 419 F.2d 216, 221 (9th Cir.1969), and *NLRB v. Shop Rite Foods, Ltd.,* 430 F.2d 786, 789–91 (5th Cir.1970). With the appeal, however, the Guild wins both ways. If the Guild prevails on appeal, the strike is justified as an unfair labor practice strike. If the Guild loses on appeal or if the Board denies review, the Guild at least has suspended negotiations with the UFCW, and its strike is still protected conduct because a "real question concerning representation" existed due to the appeal. Brief for the National Labor Relations Board at 24 n. 14. Congress could not have intended this result.

Alternatively, the Board argues that its grant of a hearing should suspend the regional director's decision based on the limited nature of the grounds for which the Board will grant a hearing, listed in 29 C.F.R. § 102.67(c). Its contention, however, is contrary to the Board's own regulations, which state that neither the filing of a petition for review of a regional director's decision nor the actual grant of review will operate as a stay of the regional director's decision. 29 C.F.R. § 102.67(b), (g). Moreover, the limited nature of the Board's discretionary review does not aid its position. Chief Justice Taft observed in 1923 that the Supreme Court denied certiorari 80% of the time but stated that a grant of certiorari would not operate as a stay of a decision of an inferior court. *Magnum Import Co. v. Coty,* 262 U.S. 159, 163–64, 43 S.Ct. 531, 532–533, 67 L.Ed. 922 (1923) (dictum) (by implication).

As the Fifth Circuit observed in *Transportation Enterprises v. NLRB,* 630 F.2d 421, 427 (5th Cir.1980), Congress has often provided that good faith reliance by an employer on an administrative determination would insulate it from liability even if the determination is later modified, rescinded, or overruled. The court held:

The NLRB and its regional offices may not render jurisdictional decisions, overrule them *retroactively* and thereby transform an employer's interim behavior, legal when pursued, into illegal unfair labor practices. An employer's conduct after a formal declaration that he is not covered by the Act, and before a re-examination of that issue, cannot subsequently be branded an unfair labor practice subjecting the employer to liability for back-pay.

. . . .

There is justifiable concern for the T.E.I. employees who will not receive back-pay because of this decision. It may be suggested that the regional director's 1972 declination of jurisdiction was a "deplorable" mistake, and the wrongdoing employer, rather than the wronged employees, should bear the consequences. Although the human heart sympathizes

with the employees who would have been entitled to be returned to their economic status quo if they had struck at a later date . . ., T.E.I.'s actions were not "wrongful" [then], and T.E.I. may not be penalized by the imposition of a back-pay award.

*Id.* at 424, 427 (footnote omitted). In *Transportation Enterprises,* the regional director's determination admittedly was allowed to become final and was overruled only in a subsequent unfair labor practice proceeding. The Fifth Circuit's comments are still relevant, however, because in both cases the employer relied on an administrative determination and its actions in reliance were subsequently branded unlawful unfair labor practices.

Policy reasons also favor allowing employers to rely on regional director determinations even if a petition for review has been filed with or has been granted by the Board. First, the regional director's decision provides a standard of conduct to which all parties can adhere until the Board changes this standard, either by modifying or overruling the regional director or by entering a temporary stay restoring the status quo. This result is, I submit, more consistent with the Congressional policy to "materially decrease the time spent in processing representation cases and eliminate advantages which parties have long sought to obtain by delays," 2 NLRB, *supra* p. 2, at 1750, *reprinted in* 105 Cong.Rec. 8874 (1959), than is the Board's alternative of putting the employer, the union, and the employees in limbo from the time a petition for Board review is filed until the Board's decision. This result also sends a clear message to unions and other parties who lose at the regional director level that if they flout the regional director's determination they do so at their own peril. Finally, as stated earlier, such a result will provide no incentive for using a Board appeal as a delaying tactic to avoid the effects of the regional director's determination.

Finally, the Board argues that Sav-On had no right to rely upon the regional di-

rector's decision pending appeal, saying that litigants generally rely at their own peril on a decision in which an appeal is pending. The filing of a notice of appeal without more, however, does not relieve either litigant of the duty to comply with a judgment or injunction issued by a lower court. *See* Fed.R.Civ.P. 62(a), (c); *Fong v. United States,* 300 F.2d 400, 410 (9th Cir.) (pendency of an appeal does not of itself supersede a lower court's judgment), *cert. denied,* 370 U.S. 938, 82 S.Ct. 1584, 8 L.Ed.2d 807 (1962).

The Board attempts to support its argument with the recent case of *W.R. Grace & Co. v. Local Union 759,* —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). I believe that case is distinguishable. In *W.R. Grace,* an employer, facing a Title VII charge because of seniority provisions in its existing collective bargaining agreement, entered into a conciliation agreement with the Equal Employment Opportunity Commission that was in derogation of the collective bargaining agreement. The employer then obtained a judgment from the district court declaring that the conciliation agreement superseded the collective agreement. Employees who were discharged under the new policy obtained an arbitral award against W.R. Grace for violation of the collective agreement. The employer sued to enjoin enforcement of the award and the Court held that the injunction should be denied, saying that the employer could not complain because the dilemma it faced—conflicting agreements with the union and the EEOC—was a product of its own actions. 103 S.Ct. at 2184–85. In this case, Sav-On Drugs took no actions that were similarly culpable. The Guild caused Sav-On's dilemma because, rather than seeking a stay of an authoritative determination that it had no legal right to make demands on behalf of its members, it flouted that determination and made its demands anyway.

## IV. CONCLUSION

I am unsure of whether Sav-On acted properly in discharging all of the strikers and in consistently refusing to rehire them. Even under the regional director's decision,

pharmacists, as opposed to pharmacy managers, were still employees within the meaning of § 2(3) of the Act. I am sure, however, that the Board overstepped its bounds in ordering reinstatement and backpay for everyone who participated in a strike that, after all, came about through outright defiance of a regional director acting within the authority given him under § 3(b) of the Act and 29 C.F.R. § 102.67(a). I therefore would not enforce the Board's order but would remand this case to the Board for it to determine whether and on what terms the pharmacists could be discharged.